# 26-141-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MICHAEL MCGREGOR, ZACHARY GIAMBALVO, PAUL FELICE, MATTHEW OLIVIERI, EDWARD NEWMAN, DARK STORM INDUSTRIES, LLC,

*Plaintiffs-Appellants,*

*v.*

COUNTY OF SUFFOLK, POLICE COMMISSIONER RODNEY HARRISON, IN HIS OFFICIAL CAPACITY AND INDIVIDUALLY, MICHAEL KOMOROWSKI, INDIVIDUALLY,

*Defendants-Appellees,*

*(Caption Continued on the Reverse)*

*On Appeal from the United States District Court for the Eastern District of New York*

## BRIEF FOR DEFENDANTS-APPELLEES

CHRISTOPHER J. CLAYTON,
    *Suffolk County Attorney*
COUNTY OF SUFFOLK
*Attorneys for Defendants-Appellees*
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
631-853-4055

By: ANNE CATHERINE LEAHEY
    *Assistant County Attorney*


(212) 719-0990
appeals@phpny.com

LETITIA JAMES,

*Intervenor,*

ACTING SUPERINTENDENT STEVEN NIGRELLI, IN HIS OFFICIAL CAPACITY,
ACTING SUPERINTENDEN DOMINICK L. CHIUMENTO, IN HIS OFFICIAL CAPACITY,
STEVEN G. JAMES,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 1

STATEMENT OF THE CASE ........................................................................ 2

STATEMENT OF THE FACTS ...................................................................... 2

SUMMARY OF ARGUMENT ....................................................................... 7

STANDARD OF REVIEW ............................................................................ 8

    POINT I: THE DISTRICT COURT CORRECTLY FOUND
    THAT GIAMBALVO AND FELICE DID NOT POSSESS
    ARTICLE III STANDING TO SUE THE COUNTY
    APPELLEES ............................................................................................ 9

    POINT II: GIAMBALVO AND FELICE HAVE WAIVED
    THEIR RIGHT TO APPEAL THE DISTRICT COURT'S
    FINDING THAT THEY LACK ARTICLE III STANDING
    TO SUE .................................................................................................... 11

    POINT III: THE DISTRICT COURT CORRECTLY
    FOUND THAT IT DID NOT POSSESS SUBJECT
    MATTER JURISDICTION TO ADJUDICATE
    APPELLANTS' CLAIM THAT THE COUNTY
    AND ITS OFFICIALS VIOLATED THE RIFLE BILL ................................. 13

        1.    Appellants' contention that Judge Brown's decision
        subjects their federal claim to state court review in
        an Article 78 Proceeding is without merit ........................................... 15

        2.    Appellants' contention that the District Court possessed
        original jurisdiction on the basis that their claims are
        paradigmatically federal is without merit .......................................... 17

        3.    Appellants' contentions regarding parallelism and
        preemption are inapplicable here ...................................................... 20

i

4.  Appellants' contention that Judge Brown's reasoning would channel all § 1983 claims for state-actor misconduct into federal court is without merit ...................................24

5.  Judge Brown's concerns about the County's compliance with the Rifle Bill support the necessity of state court adjudication ...................................................................25

POINT IV: ALTERNATIVELY, APPELLANTS' *MONELL* CLAIMS AGAINST THE COUNTY SHOULD BE DISMISSED SINCE THE COUNTY CANNOT BE LIABLE UNDER 42 U.S.C. § 1983 FOR ENFORCING THE MANDATORY PROVISIONS OF THE RIFLE BILL .........................26

POINT V: ALTERNATIVELY, THE INDIVIDUAL COUNTY APPELLANTS ARE ENTITLED TO QUALIFIED IMMUNITY .................30

CONCLUSION ..................................................................................32

CERTIFICATE OF COMPLIANCE ...................................................33

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AmBase Corp. v. United States*,
  731 F.3d 109 (2d Cir. 2013) ...................................................................8

*Amore v. Novarro*,
  624 F.3d 522 (2d. Cir. 2010) ................................................................31

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*,
  2011 WL 3427138 (S.D.N.Y. Aug. 5, 2011), *aff'd*,
  678 F.3d 184 (2d Cir. 2012) ....................................................13, 16, 24

*Cartagena v. City of New York*,
  257 F. Supp. 2d 708 (S.D.N.Y. 2003) ..................................................16

*CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*,
  158 F.4th 368 (2d Cir. 2025) ................................................................12

*Coleman ex rel. Coleman v. Daines*,
  19 N.Y.3d 1087 (2012) .........................................................................20

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ..............................................................................21

*Connecticut ex rel. Blumenthal v. Crotty*,
  346 F.3d 84 (2d Cir. 2003) ..............................................................30, 31

*Davidson v. Capuano*,
  792 F.2d 275 (2d Cir. 1986) .................................................................23

*DeMaria v. New York State Unified Ct. Sys.*,
  No. 23 CIV. 3627 (PAE), 2024 WL 1076543
  (S.D.N.Y. Mar. 12, 2024) ......................................................................23

*Felder v. Casey*,
  487 U.S. 131 (1988).........................................................................21, 22

*Gualandi v. Adams*,
  385 F.3d 236 (2d Cir.2004) .....................................................................8

iii

*Haywood v. Drown*,
   556 U.S. 729 (2009)..................................................................19, 21, 22

*In re Enf't Of Philippine Forfeiture Judgment Against All
   Assets Of Arelma, S.A.*,
   153 F.4th 142, 164 (2d Cir. 2025), *cert. denied*,
   146 S. Ct. 1511 (2026), and *cert. denied*, 2026 WL 1855068
   (U.S. June 29, 2026) ...............................................................................12

*Jones-Bey v. Stanislov*,
   No. 23 CIV. 5599 (DEH), 2024 WL 3520636
   (S.D.N.Y. July 23, 2024) ..........................................................14, 20, 24

*Juzumas v. Nassau County, New York*,
   33 F.4th 681 (2d Cir. 2022) ...............................................................*passim*

*Latino Officers Ass'n v. City of New York*,
   253 F. Supp. 2d 771 (S.D.N.Y. 2003) ....................................................20

*McCarthy v. S.E.C.*,
   406 F.3d 179 (2d Cir. 2005) ............................................................12, 13

*McGregor v. Suffolk Cnty.*,
   No. 23-1130 (GRB) (ARL), 2025 WL 3704289
   (E.D.N.Y. Dec. 22, 2025) ...................................................................*passim*

*Monell v. Dept. of Social Services of City of New York*,
   436 U.S. 658, 98 S.Ct. 2018 (1978)...................................................*passim*

*Siemens Energy, Inc. v. Petroleos de Venezuela, S.A.*,
   82 F.4th 144 (2d Cir. 2023) .......................................................................9

*Silva v. Farrish*,
   47 F.4th 78 (2d Cir. 2022) .........................................................................9

*Solnick v. Whelan*,
   49 N.Y.2d 224 (1980)...............................................................................13

*Spokeo, Inc. v. Robbins*,
   578 US. 330 [2016].....................................................................................9

*Vives v. City of New York*,
   405 F.3d 115 (2d Cir. 2005) ....................................................................30

iv

*Vives v. City of New York*,
  524 F.3d 346 (2d Cir. 2008) ......................................................*passim*

*Whitfield v. City of New York*,
  96 F.4th 504 (2d Cir. 2024) ..................................................20

*Zervos v. Verizon New York, Inc.*,
  252 F.3d 163 (2d Cir. 2001). ...................................................9

**Statutes**

28 U.S.C. § 1343(a)(3).................................................................19

28 U.S.C. § 2403(b) ....................................................................5

42 U.S.C. § 1983......................................................................*passim*

Correction Law § 24 ..................................................................22

CPLR Article 78.......................................................................*passim*

CPLR § 7801...............................................................................22

CPLR § 7803(3)...........................................................................16

CPLR § 7806..............................................................................23

Penal Law § 400.00....................................................................11, 28

Penal Law § 400.00(1)................................................................28

Penal Law § 400.00(2) .............................................................3, 16, 28

Penal Law § 400.00(11)(c) .......................................................18, 26, 27

**Rules**

Federal Rule of Appellate Procedure 28(a)(6).......................................12

Federal Rule of Appellate Procedure 28(a)(8).......................................12

Federal Rule of Civil Procedure 24(a)(1) ...........................................5

**Constitutional Provisions**

Second Amendment ...............................................................................*passim*

**Other Authorities**

New York Senate Bill 9458 ............................................................1, 2, 4

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did Giambalvo and Felice possess Article III standing to sue the County of Suffolk and its officials where their injuries were traceable to their refusal to comply with the New York Senate Bill 9458 (the "Rifle Bill") rather than to County policies?

2. Did Giambalvo and Felice waive their right to appeal the dismissal of their claims against the County for lack of standing?

3. Was Appellants' core, substantive claim against Suffolk County and its officials that Suffolk County violated the Rifle Bill? And did that claim raise a question pursuant to NY CPLR Article 78 over which New York State Supreme Court possessed exclusive jurisdiction?

4. Can Suffolk County and its officials be liable under *Monell* for enforcing the Rifle Bill where they did not have a meaningful choice regarding enforcement and where their implementation of the Rifle Bill did not "go beyond" its mandates?

5. Are the individual appellees, Kevin Catalina and Michael Komorowski entitled to qualified immunity for the discretionary manner in which they enforced a state statute that had not been struck down as unconstitutional?

1

## STATEMENT OF THE CASE

Defendants-appellees Suffolk County, Suffolk County Police Department ("SCPD") Commissioner Kevin Catalina,[1] and Michael Komorowski (collectively, "County Appellees"), submit this brief in opposition to the appeal of Plaintiff-Appellants Michael McGregor, Zachary Giambalvo, Paul Felice, Edward Newman, and Dark Storm Industries, LLC, from the Decision and Order dated December 22, 2025 of the Hon. Gary R. Brown denying the Appellants' motions for summary judgment and granting the cross-motions for summary judgment filed by the County Appellees and by New York State ("the State").

## STATEMENT OF THE FACTS

On December 1, 2023, Appellants filed an Amended Complaint ("Complaint") (DE 47[2]) pursuant to 42 U.S.C. § 1983, against the County Appellees and against the Acting Superintendent of the New York State Police for alleged harms "resulting from (i) Defendants' enforcement of New York Senate Bill 9458 (the "Rifle Bill"), and (ii) the enforcement of licensing policies and procedures in Suffolk County." DE 47, p.1.

---

[1] The complaint was initially brought against former SCPD Commissioner Rodney Harrison.
[2] Documents in the Electronic Docket maintained by the District Court in this matter will be identified by their Docket Entry [DE] number.

2

The Rifle Bill was enacted on June 6, 2022, and went into effect on September 4, 2022. It provides that "[a] license for a semiautomatic rifle, other than an assault weapon or disguised gun, shall be issued to purchase or take possession of such a semiautomatic rifle." N.Y. Penal Law § 400.00 (2). The Rifle Bill sets forth eligibility requirements for a license for a semi-automatic rifle ("SAR") which are exactly the same as the requirements for a license "to carry or possess a pistol or revolver or to purchase or take possession of a semiautomatic rifle." *Id.* § 400.00 (3). The Rifle Bill requires the following:

- an individual must obtain a semiautomatic rifle license or receive an endorsement on an existing pistol license to purchase a semiautomatic rifle, *id*., § 400.00(1);

- semiautomatic rifle owners must register their rifle on their license before taking possession, *id*., § 400.00(9); and

- licensing officers are allowed to consider an applicant's "character, temperament and judgment" in determining whether to grant a license, *id*., § 400.00(1)(b).

Count I of the Amended Complaint alleged that "defendants are liable to plaintiffs for violations of their preexisting and guaranteed individual rights as protected by the Second Amendment." DE 47, ¶ 169. Count II alleged that, "by creating, maintaining, enforcing, following, and/or applying Suffolk County's

unconstitutional policy described herein," the County "is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of Plaintiffs' constitutional rights." *Id*., ¶ 169. The County policy alleged to be unconstitutional was "the policy that handgun licenses were 'good enough' to allow purchase or sell a semiautomatic rifle." *Id*., ¶ 69.

The Amended Complaint's primary challenge was to the facial constitutionality of the Rifle Bill. *Id*., ¶¶ 37 – 63. Its claim against the County Appellants took the form of an as-applied challenge to the manner in which the Suffolk County Pistol Licensing Bureau ("PLB") implemented the Rifle Bill. Appellants alleged that "from June 6, 2022 through September 2023, and at the direction of Harrison and Komorowski, the SCPD Pistol License Bureau refused to amend existing handgun licenses to reflect the Rifle endorsement," *Id*., ¶ 75 It claimed that "SCPD will not issue Rifle Licenses and will only issue handgun licenses; under SCPD policy, any individual seeking to lawfully purchase, receive, or transfer a semiautomatic rifle must apply for a **handgun license**." *Id*., ¶ 89 (bolded in original).

The Amended Complaint sought the following relief: a declaration that the Rifle Bill was unconstitutional; a declaration that County policies for the licensure of SARs were unconstitutional; an injunction enjoining state and county officials "from enforcing any provision of Senate Bill 9458"; nominal damages and

compensatory damages for violating Appellants' Second Amendment rights; an award of economic damages to Newman and DSI; punitive damages against the individual County Defendants; and costs, disbursements, and attorney's fees. *Id.*, Wherefore Clause

On November 13, 2024, the parties filed a stipulation of dismissal as to the Superintendent of the State Police, DE 82, which was So Ordered on November 14, 2024. On December 9, 2024, the Court granted a consent motion filed by nonparty Letitia James, Attorney General of the State of New York, which sought to intervene in this action pursuant to 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 24(a)(1) for the limited purpose of defending the constitutionality of the Rifle Bill. DE 86; DE 85, p.1. All parties moved for summary judgment. On December 22. 2025, 12, 2024, the Hon. Gary R. Brown granted summary judgment for the State and the County Appellees and denied summary judgment for Appellants.

In their motion for summary judgment against the State, Appellants had sought to facially invalidate the Rifle Bill. The District Court denied Appellants' summary judgment motion against the State and granted the State's cross-motion for summary judgment on the basis that "[t]he record evidence and historical data show that the Rifle Bill's licensing, registration, and moral character requirements fit comfortably within three hundred years of state firearm regulations." *McGregor v. Suffolk Cnty.*, No. 23-1130 (GRB) (ARL), 2025 WL 3704289, at *4–5 (E.D.N.Y. Dec. 22, 2025).

In their motion for summary judgment against the County, Appellants had contended that the County's implementation of the Rifle Bill violated the Second Amendment. Regarding this contention, Judge Brown held that "the underlying facts are not in dispute," and specifically found that that there was no dispute regarding the following facts:

> Because "[t]he computer company PLB had been using no longer existed, and PLB's efforts to upgrade its system with a computer that could print a separate [semiautomatic rifle] license were unsuccessful," the PLB developed a workaround. *Id*. [citing DE 101-7 at 19.] Reasoning that the requirements for obtaining a semiautomatic rifle and pistol license were identical, the PLB allowed firearms dealers to transfer a semiautomatic rifle to a buyer once the PLB notated the back of the buyer's pistol license with the rifle's make, manufacturer, and serial number, and the buyer presented a PLB-issued purchase order to the dealer. *Id*. at 19-20.

> Beginning in September 2023, following commencement of this lawsuit, the PLB endorsed the back of pistol licenses. DE 47 ¶ 120. Starting in October 2024, the PLB accepted applications for a semiautomatic rifle license. DE 79 at 2. Suffolk County residents purchasing semiautomatic rifles can do so either via an endorsement to a valid New York State pistol license or a properly issued Semiautomatic rifle license.

*McGregor*, 2025 WL 3704289, at *2. The Court then held that "claims for equitable relief are moot given that the PLB began endorsing pistol licenses in September 2023 and issuing semiautomatic rifle licenses in October 2024," but that "claims for damages arising out of the PLB's policy between September 2022 and September 2023 are not moot." *Id*. at *5.

6

The District Court next conducted an analysis of its subject matter jurisdiction, dismissing the complaint against the County Appellees for lack of subject matter jurisdiction on grounds (1) that "Giambalvo and Felice lack standing to sue the County Defendants, because they cannot trace any alleged harm to the PLB's implementation of the Rifle Bill," *id*. at \*6; and (2) that "claims alleging violation of a state statute should have been brought in New York state court pursuant to Article 78 of the New York State Practice Law and Rules ("Article 78")," *id*.

Plaintiff's appeal of the District Court's dismissal of the complaint against the County Appellees should be denied and dismissed for the reasons set forth below.

## SUMMARY OF ARGUMENT

The District Court correctly dismissed the claims of Giambalvo and Felice for lack of standing on the basis that they could not trace any injuries to the County and its officials.

The District Court correctly found that Appellants' core, substantive claim raised a question under CPLR Article 78 over which state supreme court possessed exclusive jurisdiction. Contrary to Appellants' claim that the District Court remanded federal claims to state court for decision *via* a parallel matter in the form of an Article 78 proceeding, the District Court dismissed Appellants' claims against the County on the basis that it did not possess subject matter jurisdiction to determine whether the County and its officials complied with the Rifle Bill. Moreover,

7

Appellants' suggestion that the District Court channeled federal claims into state court for resolution in an Article 78 proceeding is without basis in fact or law since an Article 78 proceeding is not a remedy parallel to a § 1983 action. An Article 78 proceeding is not an action for awarding monetary damages to plaintiffs for constitutional violations and is rather a special proceeding for challenging governmental action which codifies the ancient writs of certiorari, mandamus, and prohibition.

Alternatively, the County and its officials cannot be liable under *Monell* for their enforcement of the mandatory provisions of the Rifle Bill.

Finally, Kevin Catalina and Michael Komorowski are entitled to qualified immunity for the discretionary manner in which they enforced a state statute which had not been struck down as unconstitutional.

## STANDARD OF REVIEW

The Court of Appeals "review[s] appeals from motions for summary judgment *de novo*." *AmBase Corp. v. United States*, 731 F.3d 109, 117 (2d Cir. 2013). "In reviewing a district court's determination of whether it has subject matter jurisdiction, [the Court of Appeals] review[s] factual findings for clear error and legal conclusions *de novo*." *Id.*, quoting *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir.2004).

8

"*De novo* review is review without deference." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001). In *de novo* review of the decision of a District Court, the Court of Appeals will "take note of it, and study the reasoning on which it is based," but the Court's "review is independent and plenary; as the Latin term suggests, we look at the matter anew, as though it had come to the courts for the first time." *Id*. In contrast, "[t]he clear error standard requires that we [the Court of Appeals] accept a district court's factual findings unless we are left with the definite and firm conviction that a mistake has been committed." *Siemens Energy, Inc. v. Petroleos de Venezuela, S.A*., 82 F.4th 144, 153 (2d Cir. 2023).

It is submitted that *de novo* review is the appropriate standard of review for this appeal since, as Judge Brown found, "the underlying facts are not in dispute," *McGregor*, 2025 WL 3704289, at *2.

**POINT I: THE DISTRICT COURT CORRECTLY FOUND THAT GIAMBALVO AND FELICE DID NOT POSSESS ARTICLE III STANDING TO SUE THE COUNTY APPELLEES.**

"To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022) (quoting *Spokeo, Inc. v. Robbins*, 578 US. 330, 338 [2016]). Judge Brown found that Giambalvo and Felice "lack standing to sue the

9

County Defendants, because they cannot trace any alleged harm to the PLB's implementation of the Rifle Bill." *McGregor*, 2025 WL 3704289, at \*6.

Regarding Giambalvo, the District Court found that neither side disputed that Giambalvo's refusal to provide details about his prior arrests in connection with his application for a pistol license would have "prevented him from obtaining a semiautomatic rifle license given that the Rifle Bill's standards for issuance of a semiautomatic rifle license are the same as those for a pistol license." *McGregor*, at \*6, citing DE 101-21, ¶ 84. Accordingly, the District Court found that "Giambalvo's inability to obtain a pistol license—for the purpose of receiving a semiautomatic rifle endorsement—is traceable to the Rifle Bills good character provision, not the PLB's policy from September 2022 to September 2023." *Id*.

Regarding Felice, the Court found that "the record is clear that his application was deficient and failed to comply with provisions in the Rifle Bill." *Id*., citing DE 101-21, ¶ 80.

Based on the undisputed facts, the District Court correctly concluded that "Giambalvo and Felice trace their alleged harm to the enactment of the Rifle Bill rather than the PLB's implementation" of the bill and thus "lack standing to sue the County Defendants over the PLB's enforcement of the Rifle Bill." *Id*.

10

**POINT II: GIAMBALVO AND FELICE HAVE WAIVED THEIR RIGHT TO APPEAL THE DISTRICT COURT'S FINDING THAT THEY LACK ARTICLE III STANDING TO SUE.**

Giambalvo's and Felice's brief on appeal does not identify as erroneous the District Court's conclusion that they lack standing to sue the County and its officials; nor does their brief advance any arguments regarding this conclusion. The only argument advanced by Giambalvo and Felice on appeal is that the subjective criteria set forth in the Rifle Bill are unconstitutional. Thus, Giambalvo and Felice assert that they "complied with every objective application requirement under N.Y. Penal Law § 400.00," but that the PLB "denied them under the same subjective 'character, temperament and judgment' standard." DktEntry 30.1, p. 18. Their position on appeal is that the Rifle Bill's subjective standard is unconstitutional since it is "the type of 'may-issue' discretionary regime *Bruen* rejected." *Id*. Appellants further argue that subjective criteria permit a licensing officer to deny an application "from a completely law-abiding citizen—one who has passed the federal background check, has no criminal history, no mental health adjudication, and no other disqualifying factor—based solely on a subjective judgment." *Id*. at 47.

Since Giambalvo's and Felice's only contention on appeal is that the subjective standard of the Rifle Bill is facially unconstitutional and since they are not contending on appeal that Judge Brown erred in finding that they lack standing to sue the County Defendants over the PLB's implementation of the bill, they have

11

waived an appeal of Judge Brown's dismissal of their claims against the County. In this regard, "Federal Rule of Appellate Procedure 28(a)(8) requires appellants to state their contentions in their opening brief." *In re Enf't Of Philippine Forfeiture Judgment Against All Assets Of Arelma, S.A.*, 153 F.4th 142, 164 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 1511 (2026), and *cert. denied*, 2026 WL 1855068 (U.S. June 29, 2026). *See also* Fed. R. App. P. 28(a)(8) (an appellate brief must contain "the argument, which must contain: (A) appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); and *id.*, Rule 28(a)(6) (an appellate brief must contain "a concise statement of the case… identifying the rulings presented for review, with appropriate references to the record.")

Giambalvo's and Felice's failure to set forth arguments challenging the finding that they lack standing to sue the County and its officials constitutes a waiver of their right to appeal that finding inasmuch as it is "reasonable to hold appellate counsel to a standard that obliges a lawyer to include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived." *McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005). "[A]rguments not raised in an appellant's opening brief, but only in his reply brief, are not properly before an appellate court even when the same arguments were raised in the trial court." *CITGO Petroleum Corp. v. Ascot*

12

*Underwriting Ltd.*, 158 F.4th 368, 388 (2d Cir. 2025), quoting *McCarthy*, 406 F.3d 186.

**POINT III: THE DISTRICT COURT CORRECTLY FOUND THAT IT DID NOT POSSESS SUBJECT MATTER JURISDICTION TO ADJUDICATE APPELLANTS' CLAIM THAT THE COUNTY AND ITS OFFICIALS VIOLATED THE RIFLE BILL.**

Appellants contend that "Article 78 may have provided one state-law mechanism to compel administrative compliance, but it could not divest the federal courts of jurisdiction over a completed damages claim for deprivation of Second Amendment rights under color of law." DktEntry 30.1, p. 50. However, this argument overlooks two principles relied on by Judge Brown which are that "[p]roceedings under Article 78 can only be heard in the State Supreme Court," *McGregor*, 2025 WL 3704289, at *7, and that "[t]o determine whether Article 78 applies to a given dispute, a reviewing court must 'examine the substance of the action to identify the relationship out of which the claim arises and the relief sought,'" *id.*, quoting *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 2011 WL 3427138, at *14 (S.D.N.Y. Aug. 5, 2011), *aff'd*, 678 F.3d 184 (2d Cir. 2012), quoting *Solnick v. Whelan*, 49 N.Y.2d 224, 229 (1980).

In considering whether Article 78 governed Appellants' dispute with the County, Judge Brown concluded that "[t]he record establishes beyond dispute that plaintiffs' core allegation against the County Defendants is that they violated the

13

Rifle Bill." *McGregor*, at *8. His conclusion was based on Appellants' presentation of their position in their memorandum in opposition [DE 101-22] to the County's cross-motion for summary judgment:

> [P]laintiffs allege that the County Defendants violated state law because the PLB "would not issue licenses, as required by [the Rifle Bill] ... or endorse existing pistol licenses to reflect [semiautomatic rifle] authorization." DE 101-22 at 6. The "constitutional harm" according to plaintiffs, is premised on the County Defendants' "circumvention of state law between September 2022 and September 2023." *Id*. at 14. Plaintiffs also note that the PLB's policy "foreclosed the people within the PLB jurisdiction from purchasing [semiautomatic rifles]" within and outside of Suffolk County "because all [firearms dealers] throughout the state were bound by state law not to transfer a [semiautomatic rifle] in the absence of an endorsed pistol license." *Id*.

*McGregor*, 2025 WL 3704289, at *7.

Premised on the conclusion that Appellants' core allegation against the County Appellants was that they violated the Rifle Bill, Judge Brown joined "other district courts that have dismissed cases brought in federal court that should have been brought to State Supreme Court as an Article 78 proceeding." *McGregor*, at *8, quoting *Jones-Bey v. Stanislov*, No. 23 CIV. 5599 (DEH), 2024 WL 3520636, at *4 (S.D.N.Y. July 23, 2024) (internal quotation marks omitted). Accordingly, the District Court determined that it lacked subject matter jurisdiction to adjudicate the claims of McGregor, Newman, and DSI against the County and its officials. *Id*.

On appeal of this determination, Appellants raise five arguments, none of which is meritorious.

14

1. **Appellants' contention that Judge Brown's decision subjects their federal claim to state court review in an Article 78 Proceeding is without merit.**

Appellants' first argument on appeal is that their federal claim is not dependent on the PLB's interpretation of state law. DktEntry 30.1, p.50 (contending that their "federal claim does not depend on whether Suffolk County correctly interpreted the Rifle Bill as a matter of state law" and urging that "[a] state actor does not escape § 1983 liability by characterizing its deprivation of a federal right as an interpretation of state licensing law.") *Id*. In this argument, Appellants are contending that Judge Brown's decision allows a state court to determine their federal claim by deciding whether the PLB correctly interpreted the Rifle Bill.

The flaw in this argument is that Judge Brown's decision did not remand Second Amendment claims to state court for decision in an Article 78 Proceeding. Rather, he determined, based on Appellants' Complaint and motion papers, that the substance of the matter and core issue was whether the County and its officials violated the Rifle Bill, an issue which raised a question pursuant to Article 78.

The District Court's conclusion is supported by Appellants' own words. Thus, Appellants' claim against the County Appellants has always been that "Defendants took no action to comply with the Rifle Bill," Amended Complaint, DE 47, ¶ 68, and that "it became the policy of the Pistol License Bureau that handgun licenses were 'good enough' to allow purchase or sell a semiautomatic rifle, notwithstanding

15

the plain language of Penal Law 400.00(2) requiring a Rifle License," *id*., ¶ 68. The

Amended Complaint further alleged:

> Harrison and Komorowski just did not want to comply. They knew that a handgun license does not allow a licensee to legally transfer or acquire a semiautomatic rifle, nor does it allow a gun store to sell one. The Penal Law specifically requires something from the licensing officer stating: "semiautomatic rifle" or words/letters to that effect.

*Id*., ¶ 71.

As Judge Brown found, "Article 78 provides a specific and exclusive remedy

where a question raised by a party goes to 'whether a determination was made in

violation of lawful procedure, was affected by error of law or was arbitrary or

capricious or an abuse of discretion.'" *McGregor*, at *6 *Bldg. Indus. Elec.

*Contractors Ass'n*, 2011 WL 3427138, at *14. Here the question at issue -- whether

the County's policy of allowing handgun licensees to purchase or sell SARs

complied with the Rifle Bill –went to whether a determination was "made in

violation of lawful procedure, was affected by an error of law or was arbitrary and

capricious or an abuse of discretion." CPLR 7803 (3). As such, the question raised

by Appellants could only be heard in State Supreme Court given that "State law does

not permit Article 78 proceedings to be brought in federal court." *Cartagena v. City

of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003).

16

**2. Appellants' contention that the District Court possessed original jurisdiction on the basis that their claims are paradigmatically federal is without merit.**

Appellants' second contention on appeal of Judge Brown's dismissal of their claim against the County Appellants is that their claim is "paradigmatically federal." DktEntry 30.1, p.51. Appellants argue that their allegation that Suffolk County "deprived them of rights secured by the Second (and Fourteenth) Amendments by foreclosing all lawful acquisition of common semiautomatic rifles in the County for over a year… falls squarely within § 1983." *Id*. They further argue that "Federal district courts have original jurisdiction over § 1983 claims" and that "federal jurisdiction…cannot be displaced by—any state procedural mechanism." *Id*.

Contrary to Appellants' argument, their core claim against the County is not paradigmatically federal and rather arose under Article 78. As Judge Brown found, the issue of whether the County violated the Rifle Bill was "plaintiffs' core allegation," *McGregor*, 2025 WL 3704289, at \*8. The correctness of this finding is apparent given that the issue of whether the County violated the Rifle Bill was fundamental to Appellants' claims against the County. Indeed, this issue had to be determined before the constitutional issue could even be reached, as shown by the framework for establishing a County's § 1983 liability for enforcing a state statute.

As is discussed in greater detail in Point IV below, a municipality does not have a conscious choice as to whether it must honor "state laws mandating

17

enforcement by municipal police officers." *Vives v. City of New York*, 524 F.3d 346, 352 (2d Cir. 2008); *see also Juzumas v. Nassau County, New York*, 33 F.4th 681, 689 (2d Cir. 2022) (finding that the mandatory language of Penal Law § 400.00(11)(c) "ends our inquiry" regarding Nassau County's § 1983 liability). However, a municipality can be liable under § 1983 where its "policy goes beyond what state law requires." *Id*. at 689.

Accordingly, if state supreme court were to find that the County's implementation of the Rifle Bill complied with the mandatory enforcement provisions of the Rifle Bill, then the County could not be liable under § 1983 for enforcing a presumptively valid statute. *See Vives*. On the other hand, if state supreme court were to find that the County's implementation of the Rifle Bill violated state law, then the constitutional issue -- of whether the County could be liable under § 1983 for going beyond the mandatory provision of the Rifle Bill and implementing a policy that violated the Second Amendment – would be ripe at that point for decision. In other words, the constitutional issue will remain theoretical and abstract and will not be ripe until a state court decides the core issue of whether the County violated the Rifle Bill.

Notably, review of Appellants' claims in state court does not foreclose the state court's simultaneous review pursuant to § 1983 since constitutional issues can be reached in state, as well as federal, forums. It is correct that federal district courts

18

have original jurisdiction over civil actions "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 USC § 1343(a)(3). However, this statute does not contain language vesting exclusive jurisdiction in federal district courts over § 1983 claims. It is well-established that "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights violated by state or local officials acting under color of state law." *Haywood v. Drown*, 556 U.S. 729, 735 (2009). "So strong is the presumption of concurrency that it is defeated only in two narrowly defined circumstances: first, when Congress expressly ousts state courts of jurisdiction (citation omitted); and second, when a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts (citation omitted)." *Id*. (internal citation and alterations omitted). Since neither circumstance applies here, state courts possess concurrent jurisdiction over Appellants' § 1983 claims to the extent they exist. In contrast, state supreme court possesses exclusive jurisdiction over Appellants' claim that the County Appellants violated the Rifle Bill.

"Although Article 78 courts are courts of limited jurisdiction and may not hear a general constitutional challenge to a law or regulation, they may entertain

19

claims [like Plaintiff's] that the application of a rule is unconstitutional." *Jones-Bey v. Stanislov*, 2024 WL 3520636, at \*4, quoting *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 779–80 (S.D.N.Y. 2003). In addition, the New York State Court of Appeals "has recognized the lower courts' creation of a hybrid that incorporates features of both an Article 78 proceeding and a section 1983 action." *Whitfield v. City of New York*, 96 F.4th 504, 522 (2d Cir. 2024), citing *Coleman ex rel. Coleman v. Daines*, 19 N.Y.3d 1087, 1089 (2012).

In sum, the District Court did not possess subject matter over the substance of Appellants' claim -- that the County violated the Rifle Bill. To the extent that Appellants' claim might also give rise to constitutional issues, those issues can be reviewed in state court, as well as federal court, once the core issue is determined in state court.

### 3. Appellants' contentions regarding parallelism and preemption are inapplicable here.

Appellants' third argument for disputing Judge Brown's dismissal of their claims against the County Appellants is that "State procedural rules cannot defeat or condition the federal cause of action provided by § 1983." DktEntry 30.1, p. 52. In support of this argument, Appellants unavailingly attempt to apply principles derived from abstention and preemption cases to the dismissal of their claims against the County Appellants for lack of subject matter jurisdiction.

20

Appellants first make an abstention argument, claiming that "a federal court cannot dismiss a § 1983 action—and direct the plaintiff into state court—because a parallel state remedy exists." *Id*. Parallelism arises in the context of Colorado River Abstention, a doctrine which provides that a federal court may abstain from exercising jurisdiction where a parallel state court proceeding is pending. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

However, Judge Brown did not choose to abstain from exercising federal jurisdiction over the Appellants claims against the County on the basis that a parallel state remedy existed in state court. Rather, Judge Brown dismissed Appellants' claims against the County on the basis that he did not possess subject matter jurisdiction over the substance of their claim which raised a narrow question that could only be determined in state court in an Article 78 proceeding.

In addition to advancing an abstention argument, Appellants put forward an argument based on preemption cases and principles, citing *Felder v. Casey*, 487 U.S. 131, 138 (1988) and *Haywood v. Drown*, 556 U.S. at 734–37, neither of which is applicable here. *Felder* considered whether a state notice-of-claim requirement with a 120-day limitations period could preclude a plaintiff from bringing a § 1983 action. The Supreme Court held that "[b]ecause the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce

21

different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in a state court." 487 U.S. 138. Unlike the notice-of-claim statute in *Felder*, CPLR Article 78 does not conflict with or impede the remedial objectives of § 1983 and therefore is not preempted by it.

*Haywood*, also a preemption case, invalidated New York Correction Law § 24, a statute which required that causes of action for damages arising out of conduct of state corrections officers within the scope of their employment be filed against the state in the New York Court of Claims, a court of limited jurisdiction, thereby withdrawing jurisdiction from the New York Supreme Court over § 1983 damages claims against correctional officers. Finding that states "lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies, the Supreme Court found "that Correction Law § 24 violates the Supremacy Clause." *Haywood v. Drown*, 556 U.S. at 736. This finding is inapplicable here as CPLR Article 78 was not enacted to override 42 USC § 1983 and does not violate the Supremacy Clause. To the contrary, Article 78 was enacted to allow a petitioner to obtain "[r]elief previously obtained by writs of certiorari to review, mandamus or prohibition." CPLR 7801.

Notwithstanding the inapplicability of *Felder* and *Haywood* to their argument, Appellants contend that "[t]he principle of these cases applies *a fortiori*

22

here." DcktEntry 30.1, p. 52. They claim that "[i]f a state cannot impose procedural conditions on § 1983 actions in its own courts, a federal court cannot dismiss a § 1983 action—and direct the plaintiff into state court—because a parallel state remedy exists." *Id*. This argument fails as an Article 78 Proceeding is not a remedy that runs parallel to an action pursuant to § 1983.

Rather, "[a] special proceeding, of which a proceeding brought pursuant to Article 78 is a particular type, is a forum for litigating a case that differs from a civil action in several ways." *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986). One significant difference is that the damage limitation provision of CPLR section 7806 relieves an Article 78 court from the burden of deciding issues typical to a civil rights damage claim such as "the presence or absence of state action, immunity of state actors, and the possible existence of a municipal custom or policy." *Id*. In general, an Article 78 Proceeding and a federal civil rights action are not considered to be parallel matters (for purposes of Colorado Abstention) since the main issue in the federal action "is distinct from the issue being litigated in state court" such that "the state court could rule for [the petitioner] without any assessment of defendants' compliance with [the federal civil rights statute]." *DeMaria v. New York State Unified Ct. Sys.*, No. 23 CIV. 3627 (PAE), 2024 WL 1076543, at *7 (S.D.N.Y. Mar. 12, 2024)

23

In sum, this is not a case where, as Appellants argue, state procedural rule can "defeat or condition the federal cause of action," DcktEntry30.1, p.52. An Article 78 proceeding is not a remedy that runs parallel to Article 78 and therefore cannot defeat or condition a § 1983 action.

4. **Appellants' contention that Judge Brown's reasoning would channel all § 1983 claims for state-actor misconduct into federal court is without merit.**

Appellants' fourth argument is that the cases relied on by Judge Brown are inapposite because "[n]one holds that a federal § 1983 claim arising from the same operative facts must be channeled into state court." DktEnty 30.1, p.53. This argument is unavailing since it is based on the fallacious premise that Judge Brown channeled Appellants' § 1983 claim into state court. Rather Judge Brown found that he did not possess subject matter jurisdiction to determine a claim arising under Article 78, a finding supported by, and in accord with, recent decisions. *See Jones-Bey v. Stanislov*, 2024 WL 3520636, at *4 (dismissing that plaintiff's claim that defendants unconstitutionally denied her a press pass and finding that the claims should have been bought in state court as it went to whether a determination was made in violation of lawful procedure, was affected by error of law or was arbitrary or capricious or an abuse of discretion); *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 2011 WL 3427138, at *14 (collecting and citing district court decisions

24

which "dismissed cases brought in federal court that should have been brought to State Supreme Court as an Article 78 proceeding").

Appellants argue that "[t]he district court's reasoning would convert every § 1983 claim against a New York state actor exercising delegated authority into an Article 78 proceeding," DktEntry 30.1, p.54, but the opposite is true. Appellants' reasoning would allow a litigant, who tacks § Section 1983 claims onto a claim arising under Article 78, to litigate his Article 78 Proceeding in federal court, even though state court possesses exclusive jurisdiction over questions arising under Article 78.

**5. Judge Brown's concerns about the County's compliance with the Rifle Bill support the necessity of state court adjudication.**

Appellants' fifth and final argument is that "federal adjudication is necessary, not optional" in view of the District Court's acknowledgement that McGreogor's allegations raised some concerns about "the PLB's claimed inability to issue rifle licenses or endorsements" and in view of similar concerns voiced by Judge Brown in an earlier decision. DktEntry 30.1, pp. 54-55. However, the concerns raised by Judge Brown go to whether the PLB complied with the Rifle Bill, a question arising under Article 78 over which state court has exclusive jurisdiction. As a result, Appellants' final argument does not support the necessity of federal adjudication and rather supports the necessity of state adjudication.

25

**POINT IV: ALTERNATIVELY, APPELLANTS' *MONELL* CLAIMS AGAINST THE COUNTY SHOULD BE DISMISSED SINCE THE COUNTY CANNOT BE LIABLE UNDER 42 U.S.C. § 1983 FOR ENFORCING THE MANDATORY PROVISIONS OF THE RIFLE BILL.**

The Second Circuit "in *Vives* establishe[d] the framework for assessing asserted constitutional violations arising from municipal enforcement of state law." *Juzumas v. Nassau Cnty., New York*, 33 F.4th at 688, citing *Vives v. City of New York*, 524 F.3d at 353 n.4. *Vives* set out "a two-part test that looks generally to the amount of autonomy enjoyed by the municipality in effectuating the policy in question." *Id*. The test: (1) asks "whether the municipality had a 'meaningful choice' as to whether it would enforce the law," and if it did (2) the test then asks "whether the municipality adopted a 'discrete policy' to enforce the law that represented a 'conscious choice' by one of its policy makers." *Id*. The municipality exercises a sufficient degree of autonomy to face liability for its policy choices "[i]f *both* conditions are met." *Id*. (emphasis provided).

*Juzumas* applied the *Vives* two-prong test to Nassau County's revocation of the plaintiff's pistol license in November 2015 premised upon his prior arrests and a misdemeanor conviction. The county informed him that he was prohibited from possessing firearms, rifles, and shotguns, whereupon he gave away his long guns in accordance with Penal Law § 400.00(11)(c), which provides that that "long guns 'shall be removed and declared a nuisance' in the event that they are not surrendered upon the suspension or revocation of a pistol license." *Id*. at 688. Plaintiff sued,

26

alleging that the County's policy interpreting § 400.00(11)(c) was "broader than the law itself, and unconstitutional as it was applied to him." *Id*. at 683. The District Court disagreed, "finding that the County acted in large part to enforce a mandatory provision of state law and was not a proper defendant under [the *Vives* case]." *Id*. On appeal, the Second Circuit affirmed this finding of the District Court "except to the extent that it failed to reach an adequate determination on the County's longarms possession policy." *Id*.

In partially affirming the District Court's decision, the Court of Appeals in *Juzumas* considered that "[i[n *Vives*, we remanded for further fact-finding on the question whether the municipality had a 'meaningful choice' as to whether it would enforce the statute" and "cautioned that the statute in question did 'not constitute such a mandate because it simply defines an offense without directing municipal officials to take any steps to act when the statute is violated.'" *Id*. at 688, quoting *Vives*, 524 F.3d at 353. The *Juzumas* Court found "[t]hat is far from the case here" where the language of Penal Law § 400.00(11)(c) was mandatory, not precatory. *Id*. The Court found that "[t]his mandatory language ends our inquiry" into whether the County could be liable under *Monell* for implementing a provision of state law and that "Juzumas's dispute rests with the state law." *Id*. at 689.

Similarly, in the instant case, the County did not possess a meaningful choice as to whether it would enforce the Rifle Bill as the Rifle Bill is written in mandatory

27

language using the word "shall" throughout. For a few examples of this, *see* Penal Law § 400.00 (1) ("No license shall be issued or renewed pursuant to this section except by the licensing officer"); and *id*. § 400.00(2) ("A license for a semiautomatic rifle, other than an assault weapon or disguised gun, shall be issued to purchase or take possession of such a semiautomatic rifle…") Further supporting the mandatory nature of SAR licensure, "[a] person is guilty of criminal purchase of a semiautomatic rifle when he or she purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter." *Id*. § 265.65; see also *id*. § 265.66,

Given the mandatory nature of the Rifle Bill, the County cannot be liable for its enforcement under the first prong of the two-part *Vives* test. Since the County could only face liability for its policy choices if both prongs were met, it is not necessary to apply the second prong of the test (determining whether the County adopted a discrete policy to enforce the law that represented a conscious choice by one of its policy makers). Accordingly, Appellant's *Monell* claims against Suffolk County for money damage should be dismissed on the basis that the County cannot be found liable for enforcing a mandatory provision of state law.

Under *Vives* and *Juzumas*, the County Appellants could be liable under § 1983 for their implementation of the Rifle Bill if, instead of enforcing the mandatory

28

provisions of the Rifle Bill, the County created and implement a policy which went beyond the Rifle Bill and was independently unconstitutional. As discussed, *Juzumas* vacated and remanded in part for the District Cout "to reach an adequate determination on the County's longarms possession policy." *Juzumas*, 33 F.4th at 683. The Second Circuit held that "[t]o the extent that Juzumas accurately interprets the County's policy as effecting an enduring ban on longarm possession by a person whose pistol license was revoked, we agree with him that the policy goes beyond what state law requires." *Id*. at 689.

In the instant case, Appellants are not claiming, and the facts do not support, that the County's implementation of the Rifle Ban went "beyond what state law requires" to effect a total ban on the possession of firearms. Appellants' claim is that the County's acceptance of pistol licenses as licensure to purchase SAR did not carry out the technical niceties of the Rifle Bill. However, as the County Defendants showed, this policy promoted access to SARS and was enacted due to the County's inability to print separate SAR licenses. Accordingly, as a matter of law, the County's policy did not go beyond the Rifle Bill and did not violate Appellants' constitutional rights. Given that the County's polices merely carried out the mandatory requirements of the Rifle Bill, the *Monell* claims against the County and its officials should be dismissed.

29

## POINT V: ALTERNATIVELY, THE INDIVIDUAL COUNTY APPELLANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The individual County Appellants, Kevin Catalina and Michael Komorowski, cannot be liable under § 1983 as they are entitled to qualified immunity for the discretionary manner in which they enforced a state statute that had not been struck down as unconstitutional.

Individual defendants may "assert qualified immunity based on [their] good faith belief that [their] actions or policies are constitutional." *Vives v. City of New York*, 524 F.3d at 350. "Qualified immunity is warranted if either (1) the official's actions did not violate clearly established law, or (2) even if the actions violated a clearly established law, the official was objectively reasonable in believing in the lawfulness of his actions." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 101–02 (2d Cir. 2003). In this regard, the Second Circuit has held that:

> absent contrary direction, state officials...are entitled to rely on a presumptively valid state statute...until and unless [the statute is] declared unconstitutional.... The enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.

*Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2005) ("Vives II"), quoting *Crotty*, 346 F.3d at 102–03 (citations, quotation marks, and alterations omitted in *Vives II*).

30

Further, "in the realm of objective reasonableness, we hold that enforcement of a presumptively valid statute creates a heavy presumption in favor of qualified immunity." *Crotty*, 346 F.3d at 104. "Officials charged with enforcing a statute on the books, as the Appellants in this case were, are generally entitled to rely on the presumption that all relevant legal and constitutional issues have been considered and that the statute is valid." *Id*. at 105; *see also Amore v. Novarro*, 624 F.3d 522, 531 (2d. Cir. 2010) ("[t]o spare police officers the unenviable choice between failing to enforce the law and risking personal liability for enforcing what they reasonably, but mistakenly, think is the law, we generally extend qualified immunity to an officer for an arrest made pursuant to a statute that is 'on the books.'")

Here, it was objectively reasonable for County officials to believe (1) that Rifle Bill was presumptively valid and (2) that the work-around that they developed to carry out their duty as law enforcement officials to implement the Rifle bill when their outmoded computer system was unable to print separate semiautomatic rifle licenses did not violate clearly established law. Accordingly, the claims against the individual County Appellants should be dismissed on grounds of qualitied immunity.

31

## CONCLUSION

The Decision and Order dated December 22, 2025, of the Hon. Gary R. Brown denying the Appellants' motions for summary judgment and granting the cross-motions for summary judgment filed by the County Appellees should be fully affirmed.

Dated:  Hauppauge, New York
       August 5, 2026

Respectfully submitted,

Christopher J. Clayton
Suffolk County Attorney
Attorney for Appellees Suffolk County,
Kevin Catalina and Michael Komorowski
100 Veterans Memorial Highway
Hauppauge, NY 11788

By: */s/ Anne Catherine Leahey*
Anne Catherine Leahey

32

## CERTIFICATE OF COMPLIANCE

This brief is in compliance with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) in that it contains 7,480 (seven thousand four hundred eighty) words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/ Anne Catherine Leahey*

Anne Catherine Leahey
Assistant County Attorney

33